MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2019 ME 55
Docket:        Wal-18-34
Submitted
 On Briefs:   October 11, 2018
Decided:       April 11, 2019


Panel:         SAUFLEY, C.J., and MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

# ESTATE OF JOHN W. GILBERT


SAUFLEY, C.J.

[¶1]   In this high-conflict, much-litigated estate dispute, the parties continue to litigate over the disposition of a piece of real property and a motorcycle together valued at $68,500.  In this third appeal, Nathan Gilbert challenges two judgments of the Waldo County Probate Court (*Longley, J.*) in which the court determined that the total expenditures made by, and deductions allowable to, Judith Gilbert, as the wife of John W. Gilbert and personal representative of John's estate, exceed the value of the estate, and distributed the estate to Judith in kind.  Nathan argues that the court made numerous errors in its findings of fact and its application of the law.[1]  We affirm the judgments.

---

[1] Judith timely cross-appeals, *see* M.R. App. P. 2C(a)(2), and correctly asserts that the court erred in finding that she claimed the decedent's motorcycle as her statutorily exempt property distributed under the Probate Code.  *See* 18-A M.R.S. §§ 2-402, 2-404 (2018).  Judith consistently asserted that she would take a share of the house as her statutory exempt property, and therefore, the court erred

## I. BACKGROUND

[¶2]  John W. Gilbert died on February 2, 2012, leaving, as the primary assets in his estate, real property and a motorcycle, along with various other personal items.  *See Estate of Gilbert*, 2016 ME 92, ¶ 2, 142 A.3d 583.  Thus ensued this acrimonious litigation between Nathan (John's son), and Judith, the personal representative of John's estate and John's long-term partner whom he married shortly before his death.  *Id.*  Seven years have passed since John's death, and the parties are before us today for the third time.[2]

[¶3]  In the most recent appeal of this case, *Estate of Gilbert* (*Gilbert II*), we remanded the matter for the Probate Court "to conduct an evidentiary hearing on the composition and value of the estate" and issue a "decision detailing the distribution of the estate consistent with the evidence produced at that hearing."  2017 ME 175, ¶ 11, 169 A.3d 382.  We emphasized the need for "finality in this unnecessarily complicated litigation."  *Id.*

---

in this finding of fact.  We need not disrupt the court's order on this issue, however, because the categorization of the statutory exempt property would not change the value of the assets in the estate, and, thus, the distribution of the estate would not change.  The error was therefore harmless.  *See* M.R. Prob. P. 61; M.R. Civ. P. 61; *Estate of Snow*, 2014 ME 105, ¶ 22, 99 A.3d 278 (requiring that the harmed party must "demonstrate both error and prejudice resulting from the claimed error" (alterations omitted) (quotation marks omitted)).

[2]  *See Estate of Gilbert*, 2017 ME 175, 169 A.3d 382; *Estate of Gilbert*, 2016 ME 92, 142 A.3d 583.

[¶4]   On remand, the court promptly held an evidentiary hearing[3] and reached a decision "[b]ased on the most credible presentations on multiple days at both the evidentiary hearing on the composition and value of the estate and the consolidated evidentiary hearing on all remaining motions . . . ."[4]  The court concluded that Judith, the personal representative of the estate, "without giving notice, now may opt immediately to distribute the estate in [] kind, to the person entitled," Judith.

[¶5]   Nathan filed a motion for findings of fact and conclusions of law, for additional findings of fact, and to amend the order.  In his motion, Nathan put forth fifty-one proposed findings of fact and seventeen proposed corrections of

---

[3]  Before the evidentiary hearing, Judith filed a motion for a pretrial conference, which the court denied.  Although Nathan argues on appeal that the court denied him due process by not holding a pretrial conference, the court had the discretion to decline to hold a pretrial conference, and the history of the acrimonious and unfocused litigation certainly supports the court's decision.  *See* M.R. Prob. P. 16(a).

Also, to the extent that Nathan argues that the lack of a pretrial conference prevented him from having his expert testify, he is simply incorrect.  The court heard lengthy voir dire from Nathan's proffered expert witness and did not err by concluding that the witness was not qualified to give an expert opinion.  *See Searles v. Fleetwood Homes of Pa., Inc.*, 2005 ME 94, ¶ 24, 878 A.2d 509 ("We review a court's foundational finding that expert testimony is sufficiently reliable for clear error."); *see also* M.R. Evid. 702, 703.

[4]  Nathan also argues that the court erred in failing to rule on Judith's unopposed motion for recusal of the presiding judge before conducting the trial.  Nathan is correct that the presiding judge began the hearings without addressing the motion.  Throughout the numerous days of the evidentiary hearing, the court addressed, and readdressed, the motion to recuse.  The record is unmistakable that the presiding judge ultimately denied the motion.  The court did not err in denying the motion; however, a court should always address a motion to recuse *before* moving forward with other matters in the case.  Any failure to do so here was harmless.

law, all regarding the value and distribution of the estate. The court issued an amended order finding that all that remained in the estate was the decedent's real property (valued at $63,500) and a Harley Davidson motorcycle (valued at $5,000). Next, the court found that Judith, as personal representative, paid necessary expenses of $40,705.58, consisting of property taxes and home insurance ($7,902.95), funeral expenses ($3,215), and administrative expenses ($29,587.63). *See* 18-A M.R.S. §§ 3-715, 3-720 (2018). The court also found that Judith was entitled to allowances and an exemption totaling $29,000, consisting of a homestead allowance ($10,000), *see* 18-A M.R.S. § 2-401 (2018), a personal allowance ($12,000), *see* 18-A M.R.S. § 2-403 (2018), and a property exemption ($7,000), *see* 18-A M.R.S. § 2-402 (2018). *See* 18-A M.R.S. § 2-404 (2018). Accordingly, Judith's expenses, allowances, and exemption—totaling $69,705.58 ($40,705.58 + $29,000)—came to $1,205.58 more than the total value of the assets in the estate ($68,500). The court therefore entered an order concluding that Judith was entitled to receive the estate in kind. Nathan timely appealed. *See* 18-A M.R.S. § 1-308 (2018); M.R. App. P. 2B (c)(1).

## II.  DISCUSSION

[¶6]   Nathan makes several contrived arguments that the court misinterpreted sections 2-101, 2-102(4), 3-707, 3-712, 3-713, 3-805, and

3-906[5] (2018) of the Probate Code and that the court ignored the personal representative's breach of her fiduciary duties.[6]   Reviewing the court's interpretation of the Probate Code as a legal issue de novo, *see Estate of Cabatit v. Canders*, 2014 ME 133, ¶ 11, 105 A.3d 439, we conclude that the court did not make any errors of law.

[¶7]   Nathan next asserts that the court made numerous errors in its fact-finding.   Because there is evidentiary support for each finding, the court did not commit clear error.   *See Estate of Plummer*, 666 A.2d 116, 118 (Me. 1995); *Wells v. Powers*, 2005 ME 62, ¶ 2, 873 A.2d 361.   He argues that the court erred in determining that the fair market value of the real property is $63,500, as opposed to $89,500; the court erred in finding that Judith paid necessary expenses totaling $40,705.58; and, the court erred in awarding Judith a $12,000

---

[5]   Nathan challenges the court's application of 18-A M.R.S. § 3-906 (2018) to the valuation and distribution of the estate because, as Nathan argues, section 3-906 is not applicable to intestate estates.   We disagree.   Article 3, which establishes a system for administration of estates, is "[d]esigned to be applicable to both intestate and testate estates. . . ."   Uniform Probate Code cmt. to art. 3, *included with* 18-A M.R.S.A. art. 3, pt. 1 (2012).

[6]   Nathan also argues that he was deprived of his due process right to a fair and impartial trial by the court engaging in "an apparent hour of ex-parte conversation."   On November 13, 2017, the hearing on pending motions began at 9:03 a.m.   Nathan and his counsel did not appear until 10:00 a.m. at which time the court stated on the record: "As we've been waiting for [Nathan and his counsel], we've been doing unrelated chitchat, friendly chitchat, and now we're ready to begin proceedings."   To adequately brief an ex parte communication violation, Nathan needed to assert, at the very least, that there were "judicial remarks [that] demonstrate conclusions or opinions that derive from extrajudicial sources untested through adversarial advocacy."   *State v. Bard*, 2018 ME 38, ¶ 45, 181 A.3d 187.   Nathan does not argue that the judge here made any remarks of this sort.   To the extent that he does raise a reviewable issue on appeal, the record does not reveal that the court engaged in any impropriety as it waited for his delayed arrival.   *See* M.R. Civ. P. 61.

6

"personal allowance" because the Probate Code does not provide for such an allowance.

[¶8] We disagree. Specifically, the court could have relied on Nathan's exhibits—the 2017 assessment records—that showed the property's total value as $63,500. The record evidence also showed that from 2013 through 2015 Judith paid $7,424.28 in taxes and insurance, and the court could have determined that Judith paid an additional $478.67 from 2015 to the time of the trial in 2017. Judith's pretrial motion and sworn affidavit evidencing funeral costs and expenses of $3,215 provided adequate support for these costs and expenses. Judith testified to the expenses she paid as recorded, line-by-line, in her blue ledger notebook, and there is therefore record evidence to support the court's finding of $29,587.63 in administrative expenses.[7] Although the "personal allowance" that the court awarded is statutorily titled "family allowance," *see* 18-A M.R.S. § 2-403, that statute provides, for the surviving spouse of the decedent, "a reasonable allowance in money out of the estate for their maintenance" not to continue for longer than one year," *see id.*, nor "in a

---

[7] Nathan contends that because Judith Gilbert's notebook of expenses was not admitted in evidence, the court impermissibly relied on the notebook to form its conclusion on the amount of reimbursable expenses. The record is clear: the notebook was admitted in evidence. Even if the notebook was not admitted, however, the court heard extensive testimony from Judith about her expenses as the personal representative. Therefore, if the court relied on the notebook even if it was not admitted, any error was harmless.

lump sum" that exceeds $12,000, *see id.* § 2-404. The court acted within its discretion to award Judith this one-time allowance to her as the surviving spouse.

## III. CONCLUSION

[¶9] The Probate Court acted well within its authority and with record support when it found Judith to be credible, particularly in light of Judith's admirable recordkeeping of the estate's costs and expenses. As the court found, "she noted each cost and expense as it occurred, when fresh in her memory. As necessary to reflect her recollection, she also had matching copies of the original receipts that she dutifully had filed with her also well-organized reports."[8] The court did not err in its application of the law or in its important factual findings when it determined that Judith was entitled to the in kind distribution of the estate. This sadly bitter litigation between family members has reached its end.

The entry is:

Judgments affirmed.

---

[8] We note that due to poorly briefed arguments, particularly related to mathematical calculations, this case was needlessly difficult for us to review.

8

Susan C. Thiem, Esq., Lincolnville, for appellant Nathan Gilbert

David Glasser, Esq., Camden, for appellee Judith Gilbert

Waldo County Probate Court docket number 2012-3
FOR CLERK REFERENCE ONLY